Case 4:14-cv-00573-A Document 19 Filed 08/12/15 Page 1 of 20 PageID 693

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 1 2 2015
CLERK, U.S. DISTRICT COURT
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARVIN GILBERT REINOSHEK, JR., <br> PLAINTIFF, | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. 4:14-CV-573-A |
| CAROLYN W. COLVIN, ACTING <br> COMMISSIONER OF SOCIAL SECURITY, <br> DEFENDANT. | § <br> § <br> § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Marvin Gilbert Reinoshek, Jr. ("Reinoshek") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Reinoshek applied for DIB on September 19, 2011, alleging that his disability began on August 7, 2011. (Transcript ("Tr.") 34, 156-59.) After his application for benefits was denied initially and on reconsideration, Reinoshek requested a hearing before an administrative law judge ("ALJ"). (Tr. 34, 119-32.) The ALJ held a hearing on January 7, 2013 and issued an unfavorable decision on February 19, 2013. (Tr. 31-116.) On May 28, 2014, the Appeals

1

Council, in a Notice of Appeals Council Action, denied Reinoshek's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 1-4.) Reinoshek subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional

capacity ("RFC"), age, education, and past work experience. *Id.* §§ 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Plaintiff presents, in essence, the following issues:[1]

A. Whether the ALJ erred in rejecting two of his physicians' opinions;

B. Whether the ALJ erred in disregarding the testimony of Reinoshek and his wife, Nancy Reinoshek;

---

[1] The Court notes that Reinoshek, in his brief, sets forth only three issues, combining issues A. and B., *infra*, into one issue. However, for ease of analysis, the Court will consider the issues as set forth herein.

C. Whether the ALJ erred in his Step Five determination by relying on incomplete vocational expert ("VE") testimony; and

D. Whether the ALJ adequately considered Reinoshek's combination of severe and mental limitations in finding that Reinoshek was not disabled.

(Plaintiff's Brief ("Pl.'s Br.") at 2, 18-24.)

## IV. ADMINISTRATIVE RECORD

In his February 19, 2013 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 34-45.) The ALJ first noted that Reinoshek met the insured status requirements of the SSA through December 31, 2016 and had not engaged in substantial gainful activity since August 7, 2011, the alleged date of Reinoshek's onset of disability. (Tr. 36.) At Step Two, the ALJ found that Reinoshek suffered from the following severe impairments: "limb-girdle muscular dystrophy with sleep-related hypoventilation/hypoxemia, and a learning disability." (Tr. 36.)

At Step Three, the ALJ held that none of Reinoshek's impairments, individually or in combination, met or equaled the severity of any impairments in the Listing. (Tr. 37.) As to Reinoshek's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he needs to alternate between sitting and standing frequently throughout the day; can occasionally stoop, crouch, crawl, kneel, balance, and climb ramps and stairs; should never climb ropes, ladders, or scaffolds; cannot work around hazards or involving extreme temperatures; can frequently, but not constantly, handle and finger; and is able to do simple job tasks.

(Tr. 38 (emphasis omitted).) Based on his RFC assessment, the ALJ opined that Reinoshek was not able to perform any of his past relevant work. (Tr. 43.) However, at the fifth step the ALJ found that jobs existed in significant numbers in the national economy that Reinoshek could

perform. (Tr. 44.) Based on this determination, the ALJ concluded that Reinoshek was not disabled. (Tr. 45.)

## V. DISCUSSION

### A. <u>Physicians' Opinions</u>

In his brief, Reinoshek complains that the ALJ erred in erroneously discounting: (1) the May 3, 2012 opinion of treating physician Jaya Trivedi, M.D. ("Dr. Trivedi"), Reinoshek's treating physician, which was in the record before the ALJ; and (2) the June 18, 2013 Psychological Evaluation opinion of Steven Greer, Ph.D. ("Dr. Greer"), which was submitted by Reinoshek to the Appeals Council after the ALJ's decision. Specifically Reinoshek states:

> The opinion of Dr. Trivedi is consistent with the Goodwill Industries Vocational report and the report of Steven Greer, PhD Psycholgy [sic]. The ALJ observed that Dr. Salmon noted that the claimant's limb girdle muscular dystrophy was worsening and recommended additional studies. (T-40) Therefore the subsequent reports of Dr. Trivedi, Steven Greer, the sleep study report and Goodwill Vocational Evaluation are entirely consistent with Dr. Salmon's earlier opinion.

(Pl.'s Br. at 20-21.)

#### 1. Dr. Trivedi's Opinion

Controlling weight is assigned to the opinions of a treating physician if they are (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566;

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

As stated above, the ALJ found that Reinoshek had the RFC to perform light work[2] except that he: (a) needed to alternate between sitting and standing frequently throughout the day; (b) could occasionally stoop, crouch, crawl, kneel, balance, and climb ramps and stairs; (c) should never climb ropes, ladders, or scaffolds; (d) could not work around hazards or involving extreme temperatures; (e) could frequently, but not constantly, handle and finger; and (f) is limited to simple job tasks. (Tr. 38.) In his opinion, the ALJ set forth and analyzed several occasions on which Dr. Trivedi examined Reinoshek, stating:

> In November 2011, Dr. Salmon referred the claimant to Dr. Jaya Trivedi. Dr. Trivedi noted the claimant had difficulty standing up from low-seated positions and could not hold objects for long, with his limit being 25 pounds. The doctor noted the claimant had no problems with speech, swallowing, or chewing, but could not lay flat due to pressure on his chest. The claimant also endorsed generalized tingling and hand numbness, and reported that he stumbles and falls a lot. The doctor requested pulmonary studies to evaluate the claimant's dyspnea and orthopnea, as well as a cardiac evaluation. The doctor also referred the claimant to a physical therapist for gait and balance training. Nerve conduction studies and FMG study showed evidence of minimally irritative myopathic

---

[2] Pursuant to the regulations, light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Furthermore, Social Security Ruling ("SSR") 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

process, but myotonia was not seen. Moreover, the nerve conduction studies were normal. Physical therapy evaluation showed the claimant had limited ankle range of motion and toe walking. However, the claimant did not start physical therapy because he could not find someone local who worked with patients with muscular dystrophy. In December 2011, the claimant reported difficulty climbing stairs and becoming short of breath, especially when lying flat in bed. However, pulmonary function studies showed FEV1 of 3.57, and no evidence of airways obstruction. Spirometry showed normal volumes but reduced MIP -60 and MEP +45 cm H20. The claimant was noted to be having diaphragmatic weakness due to his limb-girdle muscular dystrophy. It was noted that the claimant did not have problems swallowing or speaking at this point.

. . . .

In May 2012, Dr. Trivedi noted the claimant still had no problems with speech, swallowing, or chewing, but continued to get dyspenic with exertion and could not lay flat due to chest pressure. The claimant also continued to endorse generalized tingling and hand numbness, but no hand weakness. He reported that he stumbles and falls frequently and has fatigue, but no low back pain and no pain radiating in his legs. Dr. Trivedi noted the claimant still had difficulty standing up from low-seated positions, and could not hold more than twenty-five pounds, for long. Dr. Trivedi also noted the claimant had asymmetric distal and proximal weakness with distal gradient, atrophy, mild eye closure weakness, and neck flexion weakness. The doctor prescribed Gabapentin for the claimant's pain.

. . . .

Dr. Trivedi also provided a letter of medical necessity [dated November 10, 2011] in which he opines that the claimant cannot walk easily, falls often, cannot walk long distances, cannot climb ladders, cannot stand for prolonged periods, and cannot lift objects greater than twenty-five pounds. (Exhibit 14F p.2). Dr. Trivedi's opinion has also been given significant weight. It also is consistent with the evidence of record. Moreover, Dr. Trivedi is a neuromuscular specialist and has been treating the claimant throughout the alleged period of disability.

Later, Dr. Trivedi was also sent a letter [dated May 3, 2012] and asked to check yes or no as to whether the claimant had the physical capacity to perform frequently sitting with brief periods of standing and walking an[d] occasional lifting up to ten pounds. (It is noted that this exhibit is extremely difficult to read and the precise language of the question may not be entirely correct.) Dr. Trievi [sic] checked "no" he did not think the claimant could do such activity. The doctor added that due to the claimant's physical disability, he cannot meet the physical expectations described above. This opinion from Dr. Trivedi is given little weight. First i[t] contradicts the opinion given by the doctor in Exhibit 14F, which was more detailed and not merely a "yes" or "no" question. Second, the

possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, including the same doctor's prior opinion.

(Tr. 40-42 (internal citations omitted).)

In making his RFC determination, the ALJ also analyzed other evidence in the record. (Tr. 38-43.) The ALJ gave the "greatest weight" to the opinions of the State Agency Medical Consultants ("SAMCs") who opined that Reinoshek could perform at the light exertional level with no additional limitations.[3] (Tr. 41; see Tr. 404-11.) Specifically, the ALJ stated:

> The opinion evidence of record supports the above residual functional capacity. The opinions of the experts who prepared the State Agency (DDS) reports are given the greatest weight. Those physicians opined that the claimant retains the capacity to perform work activities at a light exertional level with no additional limitations. Moreover, the State Agency psychologist opined that the claimant can understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrated [sic] for significant periods, accept instructions, and respond appropriately to changes in routine work settings. These expert opinions are balanced, objective, and consistent with the evidence of record as a whole. Although these experts did not have an opportunity to examine or treat the claimant, the reports clearly reflect a thorough review of the record and are supportable. However, I find these experts failed to consider adequately the impact the claimant's limb-girdle muscular dystrophy has on his ability to stoop, crouch, crawl, kneel, balance, climb, handle, and finger. In addition, due to his frequent falling, the claimant cannot work around hazards. Moreover, the evidence shows that the claimant's learning disability limits him beyond that opined by the State Agency psychological consultant.

---

[3] In a Physical Residual Functional Capacity Assessment ("PRFCA") dated November 3, 2011, SAMC Frederick Cremona, M.D., opined that Reinoshek: (a) could lift and/or carry twenty pounds occasionally and ten pounds frequently, (b) could sit, stand, and/or walk about six hours in an eight-hour workday, (c) had the unlimited ability to push and/or pull, and (d) had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 404-11.) This PRFCA was affirmed by SAMC Kelvin Samaratunga, M.D., on February 23, 2012. (Tr. 463.) In a Mental Residual Functional Capacity Assessment dated February 23, 2012, SAMC Murray Lerner, Ph.D., opined that Reinoshek had the RFC to "understand, remember, carry out detailed but not complex instructions, make decisions, attend and concentrate for significant periods, accept instructions and respond appropriately to changes in routine work settings." (Tr. 480; see also Tr. 464-76.)

(Tr. 41 (internal citations omitted).) In addition, the ALJ gave "significant weight" to an August 2011 Disability Claim Form completed by another one of Reinoshek's treating physicians, Thomas Salmon, M.D. ("Dr. Salmon"). (Tr. 42; *see* Tr. 489-91.) In the form, Dr. Salmon opined, *inter alia*, that Reinoshek "should not lift more than twenty-five pounds, should do a limited amount of stooping and climbing, but can sit, stand, and walk each up to 50% of the day. (Tr. 42; *see* Tr. 489-91.)

In this case, Reinoshek complains that the ALJ erred in disregarding Dr. Trivedi's opinion in the May 3, 2012 letter in which Dr. Trivedi checked "no" when "asked if Plaintiff had the capacity to perform frequently [sic] sitting with brief periods of standing and walking an[d] occasional lifting up to ten pounds." (Pl.'s Br. at 19; *see* Pl.'s Br. at 18-21.) The Court notes that an ALJ may assign little or no weight to a treating physician's opinion when there is "good cause" to do so. *See Newton*, 209 F.3d at 455 ("The opinions [of a treating physician] may be assigned little or no weight when good cause is shown."). In this case, the ALJ found, as set forth above, good cause based on other evidence in the record, including Dr. Trivedi's opinion in the November 10, 2011 Letter of Medical Necessity, the opinions of the SAMCs, and the opinion of Dr. Salmon, another treating physician. This evidence constitutes substantial evidence upon which the ALJ can rely to assign Dr. Trivedi's May 3, 2012 opinion "little weight." The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Consequently, the ALJ did not err and remand is not required.[4]

### 2. Dr. Greer's Opinion

As to the opinion of Dr. Greer in the June 18, 2013 Psychological Evaluation, the Court notes that Reinoshek submitted such opinion after the ALJ's February 19, 2013 decision but prior to the May 28, 2014 Notice of Appeals Council Action. (*See* Tr. 2, 25-29.) Reinoshek claims that Dr. Greer's statement that Reinoshek's "prognosis for closure seems exceptionally guarded, colored by limited collaborative intent in a context of longevity concerns, deteriorating physical integrity, ability limitations, and financial disincentives" was supportive of other evidence in the record indicating that Reinoshek was disabled. (Tr. 29; Pl.'s Br. at 18-21.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. § 404.970(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* at 332. The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28,

---

[4] In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453. Because Reinoshek did not argue that the ALJ failed to properly consider such factors prior to rejecting the opinions of the treating physicians, the Court will not address such factors.

10

2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010). "A court considering [the] final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee*, 2010 WL 3001904, at *7 (citing *Higginbotham II*, 163 F. App'x at 281-82).

Based on the foregoing, the issue before the Court is whether Dr. Greer's opinion that Reinoshek submitted to the Appeals Council diluted the record to such an extent that the ALJ's determination became insufficiently supported. In this case, it is clear that the Appeals Council clearly considered Dr. Greer's opinion as the Appeals Council, in the Notice of Appeals Council Action, stated that it had looked at "a psychological evaluation report from Steven E. Greer, Ph.D."[5] (Tr. 2.) Even assuming Dr. Greer's opinion was relevant to the applicable time period being considered by the ALJ, Dr. Greer's diagnosis does not show that Reinoshek's mental impairments affected his ability to work beyond what had already been considered by the ALJ. Thus, the Court finds that Dr. Greer's opinion does not dilute the record to such an extent that the ALJ's determination became insufficiently supported. Consequently, there was no error and remand is not required.

---

[5] The Appeals Council stated that "[t]his new information is about a later time," and "[t]herefore does not affect the decision about whether you were disabled beginning on or before February 19, 2013[,]" the date of the ALJ's decision.

11

B.     <u>**Testimony of Reinoshek and His Wife**</u>

Reinoshek also argues that the ALJ erred in discounting the testimony of Reinoshek and his wife, Nancy Reinoshek. (Pl.'s Br. at 18-21.) Reinoshek claims that a "review of the entire record shows overwhelming support for the testimony of Plaintiff and his wife." (Pl.'s Br. at 19.) In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1.

A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529.[6] In addition, pursuant to SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006), evidence from "other sources" such as spouses may be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." However, information from these other sources "cannot establish the existence of a medically

---

[6] When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3.

determinable impairment" but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

"Credibility determinations by an ALJ are entitled to deference." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 3:07-CV-1749, 2008 WL 4791319, at *12 (N.D. Tex. Oct. 30, 2008) (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)). "The ALJ is in the best position to assess a claimant's credibility since the ALJ 'enjoys the benefit of perceiving first-hand the claimant at the hearing.'" *Alexander*, 2008 WL 4791319, at *12 (quoting *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). "Nevertheless, the ALJ's 'determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Alexander*, 2008 WL 4791319, at *12 (quoting SSR 96-7p, 1996 WL 374186, at *4). Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the *un*controverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In his decision, the ALJ acknowledged that he had a duty to evaluate the credibility of statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms that are not substantiated by the objective medical evidence. (Tr. 38.) After setting forth the statements Reinoshek and his spouse made at the hearing before the ALJ, as well as in other reports, and analyzing the objective medical evidence in the record (Tr. 38-43), the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The medical evidence of record does not fully support the extent of limitations alleged by the claimant. . . .
>
> . . . .
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He testified that he can drive, grocery shops, and does some household chores. He even cares for his two-year old daughter during the day, with occasional assistance from his mother-in-law. Moreover, the claimant walks without an assistive device, and was able to sit through the hearing without displaying any evidence of pain or discomfort. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. Moreover, the record reflects that the claimant went on a vacation since the alleged onset date. He testified that he and his family drove to California to go to Disney World. While the claimant stated that his wife did most of the driving and that he rented a scooter to use while at the park, the claimant's decision to go on a vacation tends to suggest that the alleged symptoms and limitations may have been overstated.
>
> . . . .
>
> Finally, the testimony of Mrs. Reinoshek does not establish that the claimant is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and

> symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable. Moreover, by virtue of the relationship as the wife of the claimant, the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the witness's testimony because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(Tr. 39, 41, 43.)

Contrary to Reinoshek's claims, the ALJ did make a proper non-conclusory determination as to the credibility of Reinoshek and his wife. The ALJ specifically discussed and explained that Reinoshek and his wife's subjective statements regarding the intensity, persistence, and limiting effects of Reinoshek's symptoms were not entirely credible because they were not consistent with the preponderance of the opinions and observations by the medical doctors in this case. Because the ALJ adequately explained the weight he assigned to Reinoshek's subjective complaints and his wife's statements based on a thorough review of the other evidence in the record, the Court concludes that the ALJ did not err in evaluating their credibility and discounting such statements.

C. **Step Five and VE Testimony**

Reinoshek also argues that the ALJ erred in his Step Five determination by relying on incomplete VE testimony. (Pl.'s Br. at 21-23.) Specifically, the ALJ claims that the VE, in essence, testified that if a person dozes off at unpredictable times then he would not be employable. (Pl.'s Br. at 21.) Reinoshek claims that medical evidence supports that he dozes off and that the VE's testimony is consistent with a Goodwill Vocational Report that was submitted to the Appeals Council after the ALJ's decision, as well as his wife's testimony. (Pl.'s Br. at 21-22.)

15

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton*, 209 F.3d at 453. "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. "[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'" *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

In this case, the ALJ included virtually all limitations that he had found in the RFC determination in the hypothetical question to the VE. (Tr. 38, 107-08.) The VE then testified that an individual limited to such work could perform jobs as a small product assembler, small part inspector, or sorter. (Tr. 107-08.) The ALJ relied on this portion of the VE's testimony in finding at Step Five that there were jobs that existed in the national economy that Reinoshek could perform. (Tr. 44.)

While the VE, when questioned further by Reinoshek's attorney did testify that a person that dozes off at unpredictable times would not be able to work at a competitive level, the ALJ

16

did not incorporate such a limitation into the RFC as he did not find it supported by the majority of the evidence in the record. (*See* Tr. 111.) The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See, e.g., Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (no reversible error if the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required.

As to Reinoshek's argument that the VE's testimony regarding Reinoshek's inability to keep from dozing off is consistent with a Goodwill Vocational Report[7] submitted by Reinoshek to the Appeals Council after the ALJ's decision, the Court notes that the Appeals Council did consider such vocational report. (Tr. 2.) However, as noted above, the VE's testimony provides substantial evidence to support the ALJ's decision at Step Five and the addition of the Goodwill

---

[7] The Vocational Evaluation Report was prepared by Sheri D. Meyers, a Vocational Evaulator, and William P. Jorgenson, Chief Vocational Evaluator, on behalf of Goodwill Industries of Fort Worth, Inc. (Tr. 9-24.) Meyers and Jorgenson evaluated Reinoshek from July 9-11, 2013, and ultimately opined that "[e]mployability is doubtful, even in the form of part-time, highly selective, accommodated supported employment." (Tr. 24.)

Vocational Report does not dilute the record to such an extent that the ALJ's determination became insufficiently supported.[8]

### D. Consideration of Combination of Severe Impairments

Reinoshek also argues that the ALJ erred in adequately considering his combination of severe physical and mental limitations. (Pl.'s Br. at 23-24.) Specifically, Reinoshek states, "In determining whether a claimant's physical or mental impairments are of a sufficient medical severity the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." (Pl.'s Br. at 24.) Reinoshek argues, in essence, that there is evidence in the record to support a finding that he is disabled, based upon all of his mental and physical limitations. (Pl.'s Br. at 24.)

Contrary to Reinoshek's arguments, the ALJ clearly considered all of his impairments in combination in determining that he was not ultimately disabled. To begin with, the ALJ, as set forth above, found that Reinoshek had multiple impairments. (Tr. 36.) The ALJ then analyzed all the evidence in the record regarding all such impairments to reach his conclusion that Reinoshek was not disabled. (Tr. 37-45.) The ALJ formulated an RFC determination that incorporated limitations for his multiple impairments. (Tr. 38-43.) Based upon this RFC determination, the evidence in the record, and the testimony of the VE, the ALJ found that Reinoshek was not disabled. Such determination, as set forth above, is well supported by the evidence in the record. As stated above, the ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the

---

[8] Reinoshek also argues that the Goodwill Vocational Report is also well supported by the testimony of his spouse. However, as noted above, substantial evidence supports the ALJ's treatment of the testimony of Reinoshek's spouse.

18

ALJ. *See Dollins* 2009 WL 1542466, at *5. Consequently, the ALJ did not err and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute* 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 26, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **RETURNED** to the docket of the United States District Judge.

SIGNED August 10, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE